Boysen v. Illinois Tool. Barragon Community Colleges Management Measures Fund.  Mr. Chief Judge, may it please the Court, my name is Paul Barsness, and Lawrence Ash and I at Parker Hudson have the privilege of representing Mr. David Boyson in his quest for separation benefits following his 2014 termination from ITW. Before outlining the reasons why this Court should reverse the denial of benefits or remand the decision back to the plan administrator, I'd like to provide a little bit of context for the shifting characterization by ITW about the reasons why they denied Mr. Boyson benefits. ITW's position before this Court is the opposite of the reasons why they gave him in the administrative process for why they denied benefits. Their current position before this Court is that the potential permanent elimination of his job in a restructuring is irrelevant because that wasn't the reason why he was terminated. The reason why he was terminated was poor performance. In the administrative process, however, they had the opportunity to deny benefits on that basis and instead said the sole reason why your benefits are being denied is because your position was not permanently eliminated in a restructuring. On September 10th, 2014... Aren't those basically different ways of saying the same thing? No. In other words, if you say the reason was not because of position elimination, the answer is that it was because of anything else that the rest of the universe comprises, right? The issue was if they wanted to base it on why he was terminated, they could decide that they have to assess whether the restructuring was the cause. They refused to engage in that analysis because they separately said, you know what? Your job wasn't even eliminated in the restructuring, so we don't have to decide if you were fired for that reason or fired for this reason. And that was the reason why they did it. So when they wrote his denial of benefits on September 10th, 2014, clarifying their denial, they said job elimination is a prerequisite. Other issues are irrelevant. And then when they sent the final decision, and this is important, this is the decision that's at issue on appeal, on December 2014, there was a one-sentence justification for the denial of benefits. And it says, the plan finds that Mr. Boyson's job was not permanently eliminated, but rather he was replaced by Mr. Kasky, and that the change in title for the position does not equate to a permanent job elimination under the plan. And now, mind you, in litigation, when we were litigating the issue, we sought documents for the reasons for his termination. And they fought that, saying that that's not — that was irrelevant. So in documents — What does — but if the position was not eliminated, what does it matter? The position was eliminated. And that's the essence. That's why he was terminated. He was terminated because the restructuring permanently eliminated his job. At the time of his termination or later? They — with his termination, they eliminated that job because they didn't replace it with another general manager. And we fought tooth and nail — Well, it doesn't have to be the same title, right? You would agree with that. I would agree. If you change the title but leave everything else the same, that doesn't really mean anything. That's right. But the evidence shows, although they didn't allow this evidence to be in the administrative record, because despite our efforts to try to get this information in the administrative record, the plan administrator refused to consider it. When we finally got a document in Discovery, at the end of Discovery, it said it's not the same job. And so we cite this in our brief. We cite document 55-2, which was a document we confronted the plan administrator with in his deposition. And it said exactly what Boyson's been saying the whole time. As we move towards divisions, the need for general manager is being eliminated. So the general manager level and title is being phased out. And it doesn't say that the business unit manager job is the same. It describes how it's different. It says they're going to streamline functions so it's going to be a less complex job with It says it's expected in the future these standalone businesses will consolidate administration and streamline functions. When relative to Mr. Boyson's termination, when was that document dated? There's not a date on the document, but this was the restructuring that was occurring at the time of his termination. He wasn't the only one let go. ITWU went from 800 business units to 90. Lots of people were losing their jobs. Did you ask or try to find out when that document was dated? So for example, I'm going to give you a hypothetical that's not this case. Sure. Mr. Boyson gets terminated on, let's say, November 1st of a given year. And a year and a half later, that memo comes out. It's not necessarily determinative that a year and a half later, Illinois Tool decided to eliminate jobs and Mr. Boyson's position. Right? So it seems to me that the temporal scope of that memo is at least relevant. I would agree with that. If it's happening around the same time, it becomes more relevant and more probative to your point. If it's very distant in the future, it becomes less relevant, I would think. I would agree with that. But I would say the most important point, Your Honor, is that these are all the types of questions the plan administrator should have been doing. And the plan administrator, we told him, we said, this is the reason, Boyson said, I'm entitled to benefits because my job was eliminated in a restructuring and there is not a single restructuring document in the administrative record. He refused to look at it. And those are the types of questions he should have been asking. But he looked at the job description, right, the new job, and he looked at the offer sheet that was given to the replacement. He did look at those things. And weren't those the most important, two most important items? What was the person who was going to replace your client to do? What were his job responsibilities? Based on that, he seemed to have made his conclusion. As we outlined in our briefing and as the plan administrator admitted, the actual documents, the job description and the offer letter actually describe a smaller position. They describe a position for business unit manager of just Chemtronics, which is just one of the subdivisions. Wasn't it subsequently amended or he had both divisions or subdivisions? Well, the plan administrator said, although those documents don't say it, I was told that he's doing something different. And again, the point isn't, is there some information? The real issue here is that the plan administrator has an obligation under ERISA to consider all of the information submitted by a claimant. And the procedure here violated the minimum procedural requirements under ERISA. I mean, this court in Mellick v. Life Insurance Company of North America said you cannot even evaluate the decision until you first determine if the administrative record is complete. And the plans express terms and the regulations require a plan administrator to consider all information submitted by a claimant. Mr. Brennan, on another point, on May the 23rd, the district court granted your motion to compel discovery and basically ordered ITW to turn over all documents relevant to the termination. And you took a deposition, the deposition was taken on June 23. I couldn't find anything in the record or the briefs or whatever, which tells me what was produced pursuant to that order before the deposition was taken. I can't imagine taking the deposition without having the documents first. But what I see, and I may be wrong in my interpretation of the briefs and whatever, the orders enter on May 23. The deposition is on June 23. And then there's a motion to compel the discovery that the May 23 order required and that was denied. Now, do I have it wrong? No, I think you have the timing right. There were documents produced. Was anything produced between May 23 and the deposition? The document was. What document is that? This is the restructuring document that we cited earlier. This is one of the... What's that, 52? 55-2. 55, yeah. And there were some other documents they produced. They produced about 500 pages worth of documents. This was the only document on restructuring. Well, what was missing according to the motion in July? Right. So, in the deposition, we confirmed a variety of things. We confirmed what information the plan administrator... You asked him what he needed to know. Right. And so, when we filed the motion to compel after the deposition, it was targeted to the most important information, that you didn't produce not just the general restructuring documents, although we do need more of these documents because we do need to get to the issues that you were talking about, is when were these documents done, what do the other documents say. We also want documents specific to his business unit. I mean, Mr. Boyson has testified that there was a specific restructuring plan for his division that would outline it, which would better explain the differences in the duties between the new business unit manager and the old general manager. But as even this document describes, you're no longer going to have to supervise HR, you're not going to have to supervise finance, marketing, sales, operations, because all of those are getting consolidated, and so a new business unit manager isn't going to have the same level of responsibilities as the general manager. But again, the issue here is just the process wasn't complete. He didn't consider... Let me ask you about the process, because one of your claims is that you didn't get a full and fair hearing. What is the standard of review? No one has specified that. The standard for review, and I just ran out of time, so I don't know if... But that's basic. Could you answer that? Sure. So the standard review is deferential. If the review is to the specific reason, which would be if they're trying to rely on a different reason, the standard review is not deferential. And you have authority for that? I will, and I will make that a key point of rebuttal for you. Thank you. Mr. Stockert. Thank you for the opportunity to present argument today, Your Honor, and may it please the Court. When the plan administrator... Could you comment on the standard review, because that's where we start? Yes, Your Honor. I believe the standard of review for whether or not there is a full and fair review for the court below is based on its erisa precedent and would be a standard that would be deferential to the administrator's decision. But the appellant says there's an exception to that where you kind of change horses midstream. And the plan administrator did not change horses midstream. What is the standard of review with regard to the full and fair hearing? I think the standard of review regarding full and fair... Because that's not a discretionary call. No, that's not... Do you agree with that? It's not a discretionary call. What I mean is the administrator doesn't have the discretion to decide what kind of, in terms of fairness, what kind of hearing I'm going to have. I believe that would be up for the Court on the de novo review standard. De novo review on that. As the decision below. That's before we get to the Williams factors. About benefits. Well, I believe in the Mellick case it said that was a part of the factors, the first factor, and is a part of what the Court should assure itself that it has a full record before it goes on and applies that analysis. And I think the Court definitely has those assurances here, as I'll talk about in my argument. Mr. Stalker, let me tell you, at least from my perspective, and I speak for myself only, a couple of concerns I have when reading the briefs, and they're not conclusive. I haven't looked at every single piece of paper in this record yet, but if the basis for the denial is that a job position was not eliminated, and that was the basis for the denial of the severance benefits, right? Absolutely. He did not experience a termination due to a permanent elimination of his job. Okay. If that's the reason, how can it be irrelevant to consider whether the company is making plans to eliminate or downsize the job that Mr. Boysen held? And how is it irrelevant to know what the person who is taking over his position, whatever that may be, has a salary that's different, lower, the same as Mr. Boysen? How are those things irrelevant for the plan administrator? Your Honor, I don't think that those things are irrelevant, and one of the things that I think is a starting point and an answer to that question is what the plan administrator did when he went to look to see why did Mr. Boysen lose his job, which was, as you said in your question to opposing counsel, the flip side of the coin. When he was presented the question about did he lose his job due to a permanent elimination of his position, he went to look at the separation information as to why it was that Mr. Boysen lost his job. And in both reviewing the performance paperwork prior to the termination and the termination documentation himself, and in his later interviews of the supervisor and the other people that were in the HR over that area, that investigation was all targeted to find is there information that would show that this was an elimination of a position that would be inclusive of a restructuring. That is what the investigation would go to find, and I don't think the plan administrator took the position that such information, if it existed, would be irrelevant. Well, what you say may be correct as to the initial level determination, right? But then there is an appeal, and in that appeal, Mr. Boysen says, I need to have the documents that he believes deal with restructuring of the company, and he believes the elimination of his position, and the plan administrator says, not relevant, not going to give them to you. At that point, how can the administrator take that position and not look at those documents? Very importantly, Your Honor, there was never a request made of the plan administrator in the administrative process for restructuring documents. What did Mr. Boysen ask for? What Mr. Boysen asked for is he asked for a series of things. One thing was proof of the company's assertion that there had been a change in title for the position, and that information was given to him by the administrator in response when he gave him the copy of the new job description for the business unit manager. But why did the administrator say that was not relevant? Whatever the request was, it said it was not relevant. The administrator said My understanding, anyway, sort of made a legal ruling. Well, I think what the administrator says is, I'm looking at a volume of information that is in front of me, and that information is all consistent that this is a performance-based discharge. You've asked for information or proof that there was a title change. I do not believe that title change is going to change my decision, but, nonetheless, here is the documentation reflecting it. But my understanding is his conclusion is derived mostly from interviewing and talking to people. I don't think so, Your Honor. Well, it wasn't based on McKiskey's employment records. It was based on Mr. Boysen's performance management records, his termination records, all of which were perfectly consistent. No, no, no. I'm talking about in terms of the job description. He then looked at the job description. There was an offer letter. There was an announcement of the replacement of Mr. Kasky, of Mr. Boysen. And what was there about Mr. Kasky's employment in the record? Nothing as I understand. No, there was. Other than he was employed. There was information in the offer letter to Mr. Kasky that showed that he was being offered a position with the same responsibility as Mr. Boysen had. There was a . . . Why did the district judge order the production on May 23 of the documents relating to the termination if they were all in the record? Your Honor . . . The court must have been satisfied that there was something missing. No, Your Honor. I do not believe it was. The judge's order on discovery there said you were ordered to produce all information regarding the plaintiff's termination to the extent not already produced. And very importantly, that information, there was not a single document produced by ITW after that order. Well, of course, of course, Boysen didn't know what you might have. Well, Your Honor, I think . . . You've got to sort of take the employer's word for it, I guess. Well, certainly, as counsel, we did a very diligent search with the employer to ensure that all information that reflected on his termination, which would include any documents of a restructuring-based nature, were produced. That restructuring memo was not in the administrative record, right? That restructuring memo was not in the administrative record. But there was something missing. No. That document was never requested of the plan administrator, and that record does not discuss Mr. Boysen's job. It does not discuss the elimination of Mr. Boysen's job. Or does it discuss? It talks about the company's ongoing restructuring efforts, and it talks to some degree about title changes. And one of those titles is Mr. Boysen's title. One of those titles was Mr. Boysen's title, but it talks about the job being mapped over to other job titles. And that's exactly what the administrator investigated, and he got information through a very diligent inquiry, including interviews of the supervisors and the HR people who would be in the know on whether or not that title change impacted Mr. Stocker's elimination of the job. Mr. Stocker, is it your position that in the district court, Boysen wanted more documents or more information than he asked the administrator to produce for appeal purposes? Absolutely, Your Honor. He asked for new information, the restructuring records. Now he wants more information than he asked for. Is that it? Absolutely, Your Honor. That is absolutely correct. In the document that Mr. Boysen is — If you're wrong about that, does your case have a problem? I'm sorry, if I'm wrong about what? If his request to the plan administrator for documents matches what he asked the district for in discovery, does your case run into problems? No, I do not believe it does, Your Honor. I think, you know, under this Court's holding — So if he asks for X to the plan administrator, right, doesn't get it, asks for X in discovery and gets it, do you think the administrative record is complete? I think that the administrative record is to be compiled by a plan administrator exercising reasonable efforts in conducting a reasonable, targeted effort to get at information that bears on the claim. This Court's precedent recognizes the fact that a plan administrator, if it does a full and fair review of a claim, doesn't have to be exhaustive and go and get every single document that could possibly exist anywhere in the company that could tangentially bear on the claim. In the Polutsky case, for example, what the Court held is, look, if there are no other sources of direct evidence that could have been investigated that were likely to disprove what the evidence that was before the administrator already showed, and if the administrator has done what he's done here, including a review of termination records, a review of the information leading up to the termination process and the performance management process, document interviews of the supervisors, HR people, interviews of replacement job descriptions, job posting, an offer letter, an announcement, all to find out, is this job really the same? Is it still continued at this business? And when there was nothing asked of the administrator for restructuring records at the claim level, it was simply not asked of him, not even identified as a category by Mr. Boyson. If later on a document that turns up that discusses the very same thing that the administrator has already made a decision on about a title change and why that does not reflect that there is an elimination of a job because other evidence, including evidence showing what that new job is and that it's doing the same thing and it's over the same business units, the title change document, that document that Mr. Barsnes has, is not going to overcome that volume of evidence. And that's perfectly consistent with this Court's precedent in recognizing the fact that if an administrator does a full and fair review, if he does all of these different things to come up with the relevant information, it doesn't matter that there may even have been a document that was missed, if you will. It reiterates the very same things that the administrator has already investigated and found other evidence about. Well, that, I think that's too, well, from my perspective, that may be too broad a statement because the administrator, if there had been a memo a week before from the top executives at Illinois Tool that said we're eliminating these positions, you know, within the next month we're eliminating these positions, and the administrator had not looked at that document, would that be a problem? If the administrator has done, administrators are not held to a perfect standard. I think it would depend on the circumstances. I'm not asking you whether he's got to be perfect. I'm asking you, does the administrator have to consider that document in that hypothetical? If, for example, the document was concealed from the administrator, not turned over by a supervisor who had the information and instead didn't share it, and the administrator has done everything he reasonably can do in an inquiry to try and get that information, which I believe the plan administrator absolutely did here, then I'm not sure that that document would say that the administrator's decision needs to be overturned, especially if it's based on a substantial volume of evidence like you have in this case that the administrator compiled that says, look, this was not, in fact, that. In other words, that would present only a situation of competing evidence, right? Alito, what did the administrator say in his deposition he did not look at or consider? What he — there were questions asked of him of counsel about certain hypothetical documents concerning disagreements between — or hypothetical situations concerning disagreements between Mr. Boyson and his supervisor. And he said, look, if there are disagreements — That's all — that's all he said he didn't consider? I thought there was a heck of a lot more. No. Like, I didn't look at these documents. I didn't look at this stuff. I didn't consider that. And all of that — There's nothing of that in the deposition? And those information, if you look at those pieces of information, those are not information that would go targeted to whether or not Mr. Boyson's position was eliminated. They just aren't there. And at the time, with the administrator having interviewed the supervisor, looked at records, all that show a performance-based discharge and that the judge below ruled are very clear, to then suggest that the administrator needed to go back further and fact-check further and find more evidence of veracity and look at more documents, that's a shifting of the burden of the administrator to go find every company record that could support the plaintiff's claim. That's plaintiff's burden. It's not the administrator's burden here. I think we understand your position. Mr. Barnett. Mr. Barnett, I think you can figure that we're focusing on the restructuring of the company documents. Yes. And I'm — Excuse me. Oh, I'm sorry. And I'm looking at, I think, the five categories of documents that were requested that the administrator provide. I don't see in those five categories something that specifically requests restructuring or even by implication. So could you tell me which category it falls under? Sure. There's a variety of communications during the administrative process where we talk about restructuring documents. So on August 8, 2014, page 107 of the administrative record, Lawrence Ash sends a letter. Because keep in mind, their initial position was, we're not getting — I don't want to know that. I want to know where you requested either specifically or by implication the restructuring documents that we obviously have some interest in. We requested restructuring documents on August 8, 2014. We said if it's true that no longer any individual serving in the general manager position, a restructuring document or communication regarding this systemic company-wide change should be relatively easy for you to produce and would certainly facilitate resolution of this dispute. Now, the categories I believe you're talking about are in the clarification of denial letter from the plan administrator. And the first category is documentation supporting ITW's assertion that the title of general manager was changed across all ITW businesses to business unit manager. So he acknowledged our request for restructuring documents in September, and this is page 115 of the administrative record. And his response is the plan is not going to address any company-wide title issues as they are not relevant to the question of job elimination. So your interpretation is a little different than my interpretation of that. It's not — maybe by implication or a stretch, but it certainly doesn't ask specifically for the restructuring documents. You would agree with that. No, I don't agree. I think on August 8, when we say — No, I'm talking about the category — Restructuring documents. No, I'm talking about the category number one. That was the appeal letter, the one you just referred to. You're relying on the August 8, 2014 letter. Right, which is our request pre-appeal. So this was our request before we filed our appeal. We need — and it's important to talk about process because none of it was followed in this case. So — Where's that letter found? Do you have a — I'm sorry? That letter, the August 8 letter, where did we find it? August letter was page 107 of the administrative record. 107? 107. Of the administrative record. Right. And the other reason we argue in our brief that wasn't done is they didn't produce the administrative record during the administrative appeal. What's the citation of the responses to that letter? So the response to that letter, when they send their clarification, is on page 115 of the administrative record. When we asked for documents supporting — regarding the change from general manager to business unit manager in the restructuring, we asked for information about other general managers affected by the restructuring. That was the second category. But they said that none of what was going on elsewhere in the company was relevant. Where is the not relevant response? Page 115 and 116 of the administrative record. Same pages? Same pages, yes. So ERISA has certain minimum requirements, and the plan administrator has no discretion to not follow them. One of those is to produce to a claimant after the initial determination and prior to appeal all of the records that were relevant, all of the records that were relied upon. They only produced three documents, the job offer, the job description, and another job — another document about the business unit manager. None of the performance documents were produced, which is consistent with the notion that they weren't denying benefits on that basis. They were only talking about and producing a few documents about whether or not this business unit manager job was the same as the other job. Now he talks a little — What specific documents? Because the district court ordered Illinois Tool to provide certain documents to you, and they provided some. So at the end of the day, which ones do you think you didn't get that you wanted to get? It's not just getting it in litigation. It's getting it in the administrative process. I know, but now we're in your district court action challenging the administrator's decision. So I want to know what documents at the end of the district court process you still think you were denied access to. We were denied access to other restructuring documents. We got one, which is just a high-level presentation. We didn't get other documents about restructuring. We didn't get the documents regarding the specific restructuring that was happening with Boyson's business unit. The other problem that didn't happen with the process was the interviews. He talked about interviews. The plant administrator never interviewed the two most important people. He didn't interview Mr. Boyson, and he didn't interview Caskey, who replaced him. He didn't talk to the two most important people. And I'm out of time. Thanks so much. I think we have your case. The court will be in recess until 9 o'clock in the morning. All rise.